In re REYNOLDS et al.

(Supreme Court, Appellate Division, First Department.  May 12, 1911.)

1. ACTION (§ 6*)—DETERMINATION OF CONSTITUTIONAL QUESTION—JUDICIAL PROCEEDING.

Judicial power is not invoked by a proceeding instituted by petition of citizens to the Supreme Court, setting forth their reasons for thinking that Laws 1907, c. 727, an act to reorganize Senate districts and for apportionment of members of the state assembly, is unconstitutional, and merely praying that the present apportionment of the state into Senate and Assembly districts be reviewed and declared void; there being no adverse parties and no controversy before the court, though there be obtained an order to show cause, directed to the Attorney General, the Governor, the temporary President of the Senate, and the Speaker of the Assembly.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 6.*]

2. ACTION (§ 6*)—DETERMINATION OF CONSTITUTIONAL QUESTION—NATURE OF PROCEEDING.

Const. art. 3, § 5, providing that an apportionment by the Legislature shall be subject to review by the Supreme Court, at the suit of any citizen, does not attempt to confer extrajudicial power on the court; but thereunder it can pass on the constitutionality of an apportionment act only when by a proper proceeding it is made a judicial question.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 6.*]

Appeal from Special Term, New York County.

In the matter of the petition of William S. Reynolds and others, on behalf of themselves and of all other citizens of the State of New York who shall join in and contribute to the expenses of these proceedings, to review the present apportionment of the State into Senate and Assembly Districts. From an order overruling objections of the respondents to the jurisdiction of the court, they appeal. Reversed, and proceeding dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Edward R. O'Malley, Bronson Winthrop, and Elon R. Brown, for appellants.

Julien T. Davies and Charles H. Tuttle, for respondents.

MILLER, J.  This proceeding was instituted by a petition of certain citizens addressed to the Supreme Court, in which, in behalf of themselves and any others who might wish to join in and contribute to the expense of the proceedings, they set forth their reasons for thinking that chapter 727 of the Laws of 1907, entitled "An act to organize the Senate districts and for the apportionment of the members of the Assembly of the state," was unconstitutional and void and concluded with a prayer:

"That the present apportionment of the state into Senate and Assembly districts be reviewed; that the said apportionment be adjudged unconstitutional and void; that your petitioners have such other and further relief as may be just, including issue of the necessary process; and that any citizen who is willing to contribute to the expense of these proceedings be permitted to join herein and to file a supplemental petition or affidavit."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Upon filing the petition, the petitioners applied for and obtained an order to show cause why their prayers should not be granted, directed to "the Honorable Edward R. O'Malley, Attorney General of the State of New York; the Honorable Horace White, Governor of the State of New York; the Honorable George H. Cobb, Temporary President of the Senate of the State of New York; and the Honorable James W. Wadsworth, Jr., Speaker of the Assembly of the State of New York." Upon the return of the order the appellants Cobb and Wadsworth appeared specially and objected to the court's jurisdiction to entertain the proceeding, and their appeal from the order denying their motion to dismiss the proceeding presents the question of jurisdiction.

This proceeding is unprecedented in this state and not in accordance with any known course of judicial procedure. The petition does not invoke the power of the court to determine a controversy between litigants, to adjudge between conflicting claims, to enforce rights, to enjoin, redress, or punish wrongs, and finally to express its determination in a judgment, decree, or order and to issue process to carry it into effect. While an order to show cause was issued to bring in other parties, the court might as well have proceeded without doing so, because the parties selected have no more interest in the proceeding than any other citizens. A party cannot come into court with an academic question and arbitrarily select some one with whom to debate it. The President pro tem. of the Senate and the Speaker of the Assembly were doubtless summoned on the theory that in their official capacities they represented the Legislature. The idea of haling the Governor and the Legislature to court to defend the official conduct of either has the merit of originality. In the great case of Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, the power to issue a writ of mandamus directed to the Secretary of State was defended by Chief Justice Marshall solely on the ground that Mr. Madison, as Secretary of State, could be required to perform a ministerial duty, in the discharge of which he was in no sense an organ of the executive will. The Attorney General is the law officer of the state; but the state is not a party to this proceeding, though the suggestion is advanced in the respondent's brief that, by service on the said officers, the state (the words "state organization" are used) was made a party, precisely as though it were a private corporation and service had been made upon its president. That view is as novel as the idea of summoning the Executive and the Legislature as adverse parties; but, if it were to be taken seriously, no right is asserted as against the state.

Suppose the court's summons had been ignored, would it be contended that it had acquired jurisdiction over the persons summoned? If so, jurisdiction to do what? Not to pass upon any rights as against them, for the petitioners assert none. Not to grant any relief against them, for none is asked. Not to enjoin or command the doing of any act, for there is nothing which they can be enjoined from doing or commanded to do, unless, indeed, the court should undertake, if it declared the act unconstitutional, to order the Governor to convene the Legislature, if not in session, and the Legislature to pass a constitutional act. Of course, the petition amounts to nothing but an invita-

tion to the court to express its views, and the order to show cause has no more force or effect than an invitation to the officers named to debate the question with the petitioners and then to hear the court expound the law.

Obviously, there are no adverse parties, and there is no controversy before the court. The question then arises: Has the court jurisdiction? That depends upon the nature of judicial power and whether extrajudicial power was conferred on the Supreme Court by the following provision of section 5, art. 3, of the state Constitution:

"An apportionment by the Legislature, or other body, shall be subject to review by the Supreme Court, at the suit of any citizen, under such reasonable regulations as the Legislature may prescribe; and any court before which any cause may be pending involving an apportionment, shall give precedence thereto over all other causes and proceedings, and if said court be not in session it shall convene promptly for the disposition of the same."

[1] The question whether the power invoked in this proceeding is judicial has been answered in the negative by the United States Supreme Court in Muskrat v. United States, and Brown v. United States, 219 U. S. 346, 31 Sup. Ct. 250, 55 L. Ed. ——. Those were proceedings instituted under the authority of an act of Congress to determine the constitutional validity of prior acts of Congress. That is, the whole object and purpose of the proceedings, as here, were comprised in the determination of that question, and it was decided that the judicial power of the court was not invoked, and that consequently the act attempting to confer authority to entertain the proceedings was invalid. Mr. Justice Day's exposition of the law as to the limits of judicial power leaves nothing to be said on that branch of the question before us. His opinion is so apposite that, without paraphrase or quotation, it may be applied to this case as demonstrating the proposition that the judicial power of the court has not been invoked.

[2] That case is to be distinguished from this only by the fact that authority to do an extrajudicial act was attempted to be conferred by an act of Congress; whereas, in this case the power is given by the said provision of the Constitution, and no doubt it was competent for the people to confer on the judicial branch revisory and supervisory power over the acts of the legislative branch. Standing alone, the words, "an apportionment by the Legislature, or other body, shall be subject to review by the Supreme Court at the suit of any citizen," might seem to confer very broad powers. The word "review" implies an appeal; and, if the petitioners' contention that a direct review was contemplated should prevail, it would follow logically that certiorari was the proper method of review. Then there would be adverse parties before the court, the petitioners and a respondent, the Legislature. The court, having by its writ required the Legislature to make a return of its proceeding, would upon that return, after hearing the petitioners and the Legislature, confirm or annul the said legislative proceedings. It is certainly fair to test a proposition by the result to which it logically leads, and that result is alone sufficient to stop the discussion at this point. The principle of the separation and division of the three governmental powers among co-ordinate branches of gov-

ernment was never before so carefully worked out and applied as by the framers of our federal Constitution. A tendency to depart from that principle has been shown in some of the states. A few state Constitutions provide for inquiries to be addressed to the judges by the Executive or the Legislature, and one provides for the propounding of questions to the court itself. That provision was considered by the Supreme Court of Colorado, and its mischief pointed out in an able opinion by Chief Justice Helm. In re Constitutionality of Senate Bill No. 65, 12 Colo. 466, 21 Pac. 478. It is impossible to foresee all the evils likely to result from the indulgence of that tendency, or to what it might lead, and it is certain that it has not been indulged in this state by the framers of its successive Constitutions, which have all carefully preserved the great principle of the independence of the three branches of government. The present state Constitution, like all of its predecessors, carefully separates, defines, and limits the powers of each branch.

"The legislative power of the state shall be vested in the Senate and Assembly." State Constitution, art. 3, § 1.

"The executive power shall be vested in a Governor," etc. Id. art. 4, § 1.

"The Supreme Court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law not inconsistent with this article." Id. art. 6, § 1.

Each within its sphere was intended to be independent of the others, Matter of Guden, 171 N. Y. 529, 64 N. E. 451. In the light of the care thus shown to preserve the principle under discussion as indispensable to our scheme of government, it is manifest that it was not intended by the provision in question to confer on any citizen the right of direct appeal from the Legislature to the courts or to confer on the courts anything but judicial power.

The word "review" was loosely used, but not without authority. Shortly before the constitutional convention of 1894, the case of People ex rel. Carter v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836, involving the apportionment of 1892, was decided. In that case the question was debated as to the extent of the court's power. The majority of the court, speaking through Peckham and Gray, JJ., asserted the proposition that the power to divide the state into Senate and Assembly districts was political, and that the action of the Legislature, in so far as it involved the exercise of discretion, was final unless a palpable evasion of the Constitution was shown. In a dissenting opinion, Judge Andrews contended, upon the authority of State v. Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561, and Giddings v. Secretary of State, 93 Mich. 1, 52 N. W. 944, 16 L. R. A. 402, for a broad power in the court to pass upon the constitutional validity of an apportionment act. In the course of his opinion Judge Peckham referred to the exercise of power by the Legislature as "the subject of review by the courts." Plainly he meant, not a direct appeal or the submission of the proposition as an abstract or academic question, but only the exercise of judicial power in the regular way in the course of some known judicial proceeding, and of course the expression was used in the same sense by the framers of

the Constitution, whose purpose was, as said by Judge Chase in the Sherrill Case, 188 N. Y. 185, 81 N. E. 124, 117 Am. St. Rep. 841, to set at rest the question of power discussed in the Carter Case.

While the question was not presented, I think it was virtually decided in the Sherrill Case, when it was first before the court. 186 N. Y. 1, 79 N. E. 7. That was an appeal from an order of the Appellate Division affirming an order denying a motion for a peremptory writ of mandamus, and the court declined to entertain jurisdiction for the reason that it did not affirmatively appear that the order of the court below was not made in the exercise of discretion; the court holding that it had no power to review except in the exercise of its general appellate jurisdiction. The court took occasion to say:

"Section 5, art. 3, of the Constitution, provides that an apportionment shall be subject to review by the Supreme Court at the suit of any citizen, under such reasonable regulations as the Legislature may prescribe; but, the Legislature never having acted under this provision and prescribed any procedure for a direct challenge of the validity of an apportionment, *the citizen is confined to existing remedies.*"

I think the use of the words "direct challenge" must have been inadvertent. The point of the decision was that the Supreme Court's jurisdiction must be invoked by the application for some existing remedy, and that the Court of Appeals derived no power from the said constitutional provision. We have seen that this proceeding fails to invoke the judicial power of the court. If, then, the court proceeds to declare its opinion, that declaration will be purely extrajudicial and not the subject of review by the Court of Appeals; the result being a final extrajudicial determination by this court of a question of constitutional law, a sufficient reason to reject the petitioners' construction.

We have not overlooked a suggestion to be found in one of the dissenting opinions in the Sherrill Case, which may seem to give some support to the proceeding adopted in this case; but we think it is manifest that the learned judge, whose opinion is relied upon, did not consider the question as it is now presented. What he had in mind was that the Constitution contemplated a speedy determination, and that therefore laches was a ground for denying the application. It is said that the Court of Appeals did finally pass on the question in the Sherrill Case after it had become academic; but in that proceeding the judicial power of the Supreme Court had properly been invoked and had been exercised while the case still presented a live controversy. The Court of Appeals had jurisdiction to review the order of the Supreme Court, and, while the question became academic before the final decision was reached, the Court of Appeals in the exercise of its appellate jurisdiction had the power to decide it, and, owing to its public importance, exercised discretion to do so.

The petitioners cite Matter of Petition of Argus Co., 138 N. Y. 557, 34 N. E. 388, in support of the contention that, no special procedure having been prescribed, the procedure by petition and order is proper. That was a case arising under section 27, c. 687, of the Laws of 1892, providing for the summary review of corporate elections by the Supreme Court. It invoked the judicial power of

the court to determine who were the legally elected directors and to require the delivery to them of the property and control of the corporation. The mere form of the procedure is of little consequence; that the Legislature may regulate. The matter of importance is that in some way the judicial power of the court must be invoked.

It may seem to the lay mind that, conceding the power of the court to set aside an unconstitutional act, it is of little consequence how that power is invoked or exercised. A practical reason for not exercising it in an extrajudicial way is the fact that, if the petitioners were confined to existing remedies, questions might arise which they escape in this proceeding. But the real reason lies at the very basis of our form of government. Courts exist, not to expound the law, as is popularly supposed, but to determine the rights of litigants, to pronounce judgments, and to issue process in execution. The constitutional validity of an act of the Legislature is a question of law; but it does not become a judicial question until it arises in the regular way in the course of some judicial proceeding. Again referring to the able opinion of Mr. Justice Day and the opinion referred to by him, we find that the court has no power to set aside unconstitutional acts of the Legislature because of any power to review the acts of a co-ordinate branch of the government, for that is repugnant to the great principle hereinbefore discussed. When a justiciable controversy is presented, the court is called upon to determine what the law is and to apply it to the particular case, and, if there is a conflict between the fundamental law and a legislative act, the court has to choose between the two, between what is law and what is not law, not for the purpose of setting aside, in the popular sense of setting aside, an act of a co-ordinate branch of government, but solely because it has to decide what the law is, in order to decide the controversy before it. The reasons for maintaining that distinction have been plainly stated by the great jurists who have expounded our fundamental law, and they are as cogent now as ever.

If the power of the court to issue a writ of mandamus to the Secretary of State, directing him to perform some ministerial duty, had been invoked, as was done in the Sherrill Case, the constitutional validity of the apportionment act might then have become a judicial question; but until its jurisdiction is invoked in some such way the court should refrain from expressing its views.

The order appealed from should be reversed, and the proceeding dismissed.

Order reversed, and proceeding dismissed, without costs. All concur.