JOSEPH S. NORTON, Plaintiff, *v.* SOUTHERN RAILWAY COMPANY and Others, Defendants.

JOSEPH S. NORTON, Plaintiff, *v.* ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY and Others, Defendants.

JOSEPH S. NORTON, Plaintiff, *v.* BALTIMORE AND OHIO RAILROAD COMPANY and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, December 16, 1930.

*Single & Single* [*Gregory S. Rivkins* and *C. Welmore Robinson* of counsel], for the plaintiff.

*Charles H. Tuttle, United States Attorney* [*Edwin H. Mead* and *Horace M. Gray* of counsel], for the defendant United States Shipping Board Merchant Fleet Corporation.

EDER, J.  Section 741 of title 46 of the United States Code, known as the Suits in Admiralty Act (41 U. S. Stat. at Large, 525), and which concerns suits in admiralty by or against vessels or cargoes of the United States, so far as relevant provides: " No vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, and no cargo owned or possessed by the United States or by such corporation, shall, in view of the provision herein made for a libel *in personam*, be subject to arrest or seizure by judicial process in the United States or its possession  *. * *.*"

Section 742 declares that " In cases where if such vessel were privately owned or operated,  * * *  a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel *in personam* may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel * * *."  This section, so far as here pertinent, further declares

that " Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with iability is found."

By virtue of section 810 of title 46 of the United States Code (39 U. S. Stat. at Large, 731) the United States Shipping Board was authorized to create and organize the corporate entity known as the United States Shipping Board Emergency Fleet Corporation. (*Lembeck* v. *U. S. S. B. E. F. Corp.*, 9 F. [2d] 558; *Anderson* v. *U. S. Fidelity & Guaranty Co.*, 8 id. 428.) By section 810-a of title 46 of the United States Code (44 U. S. Stat. at Large, 1083) its name was changed to the United States Shipping Board Merchant Fleet Corporation. Judicial notice must be taken of the fact that all of its stock is owned by the United States of America. (*United States* v. *Strang*, 254 U. S. 491; *U. S. ex rel. Skinner & Eddy Corp.* v. *McCarl*, 275 id. 1; *United States* v. *Brown*, 247 N. Y. 211.) It, therefore, comes, without question, within the purview of section 741.

By section 743 it is, among other things, provided that " Such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." And it is further provided in section 748 that " Any final judgment rendered in any suit herein authorized, * * * shall, upon the presentation of a duly authenticated copy thereof, be paid by the proper accounting officers of the United States out of any appropriation or insurance fund or other fund especially available therefor; otherwise there is appropriated out of any money in the Treasury of the United States not otherwise appropriated, a sum sufficient to pay any such judgment * * *." (U. S. Code, tit. 46, § 748.)

In discussing the purpose and object of the Suits in Admiralty Act, the court, in *Johnson* v. *U. S. S. B. E. F. Corp.* (280 U. S. 320), says (p. 325): " Prior to the passage of the Act, merchant vessels of the United States were subject to seizure. * * * And the Fleet Corporation was liable to be sued in state or federal courts on causes of action arising out of the operation of such ships. * * *. The Act relieved the United States of the inconvenience resulting from such seizures and gave remedy by libel *in personam* against the United States and such corporations. * * *. But that is not its only purpose. It authorizes libel *in personam* where there is nothing on which recovery *in rem* could be had. * * * *And it furnishes the exclusive remedy in admiralty against the United States and such corporations on maritime causes*

*of action arising out of the possession and operation of merchant vessels.*" (Italics are author's.) (See, also, *Connett* v. *U. S. S. B. E. F. Corp.*, 37 F. [2d] 1011, and *Duffy* v. *U. S. B. E. F. Corp.*, 228 App. Div. 808.)

The provisions of all other acts inconsistent with those of the Suits in Admiralty Act were repealed. (See *U. S. S. B. E. F. Corp.* v. *Rosenberg Bros.*, 276 U. S. 202, 213.) And in the case last cited it is said (p. 214): " It follows that after the passage of the Act no libel in admiralty could be maintained against the United States or the corporations on such causes of action except in accordance with its provisions."

The defendant Fleet Corporation moves to dismiss the actions upon the ground that, as to it, these actions are *maritime* in their nature; that plaintiff seeks to recover damages for injury to merchandise shipped on the steamship *Hatteras*, which, at all times mentioned in the complaints, was owned by the United States of America; that the money required to pay a judgment in such actions would come out of the Treasury of the United States; that the said vessel, at all times mentioned in the complaints, was operated by or for the account of the United States of America, acting through the United States Shipping Board by the Fleet Corporation and Consolidated Navigation Company, as its managing agent; that by virtue of these facts, this court lacks jurisdiction of the subject-matter of the actions, as to such defendant, and it relies on the *Johnson Case* (*supra*) to sustain its contention.

The plaintiff maintains, in opposition, that the facts in the *Johnson Case* (*supra*) and those in the case at bar are not parallel, and it is, therefore, inapplicable.

The facts, in consequence, must be analyzed to determine the question.

These actions were instituted to recover for damage sustained to shipments of flour originating at interior points in the United States, moving by rail to the Atlantic seaboard and from there by water to several ports in Ireland. The plaintiff is the assignee of the owners of the merchandise. The complaints allege the delivery of the merchandise in good order and condition at the places of the origin of the shipments to the initial rail carrier; that in consideration of the payment of the freight, the various defendants agreed to deliver the merchandise safely, and in like good order and condition, to the consignees in Ireland; the failure and neglect of the defendants to do so but that the merchandise was delivered damaged and seriously impaired in value; that the plaintiff is in doubt as to which defendant is liable, and, therefore, pursuant to sections 211

and 213 of the Civil Practice Act, joins them all so that the court may determine which of them is liable.

Whatever the facts and merits of the controversies may be as to the defendant rail carriers, we are, on these motions, as I view the matter, concerned only with the following questions, viz., whether, as to the defendant Fleet Corporation, the action is one against it within sections 741 to 748 of title 46 of the United States Code; whether the contracts in question are, as to it, maritime in their nature; whether, at the time, the steamship *Hatteras*, the vessel to which the merchandise was delivered and on which it was transported to Ireland, was owned by the United States or operated by or for its account through the Shipping Board by the Fleet Corporation and the Consolidated Navigation Company, as its agent, and whether the money required to pay a judgment in these actions would come out of the Treasury of the United States. Epitomized, whether this court has jurisdiction of an action founded upon a *maritime* contract.

The merchandise alleged to have been damaged was carried by rail and steamer on uniform through export bills of lading issued by the respective rail carriers; the bill of lading issued by the Consolidated Navigation Company recites that it is managing operator and agent for the United States Shipping Board and that the merchandise is to be transported by the American steamship *Hatteras*. This bill of lading issued by the Consolidated Navigation Company, as managing operator and agent for the Shipping Board, covers the shipment by the St. Louis-San Francisco Railway Company, and is the only one, apparently, in which the bill of lading was issued by the steamship company, as agent for the Shipping Board. An examination of the through bills of lading issued in the other instances, *i. e.*, by the Southern Railway Company, by its agent, the Baltimore and Ohio Railroad Company, discloses that they have two essential parts. Part I covers carriage on land. Part II covers carriage by sea. And it is to be observed that it is signed " On behalf of carriers severally but not jointly." Part II, clause 14, thereof, provides: " 14. The property covered by this bill of lading is subject to all conditions expressed in the regular form of port bill of lading in use by the steamship company on the date of execution of this document and on file, in accordance with the rules and regulations of the United States Shipping Board and/or the Interstate Commerce Commission, but if any of such conditions are in conflict with conditions 1–15 of Part II of this bill of lading, the latter conditions shall control."

As the merchandise in question was destined for Ireland, a sea trip was necessarily involved and it can hardly be questioned but

that the Fleet Corporation was an ocean carrier and that the elements of a maritime contract are present, and that, so far as the transportation by sea is concerned, it must be regarded as a water contract. " * * * Contract rights are maritime * * * when they relate to the ship as an instrument of commerce." (*Pillsbury Flour Mills Co.* v. *Interlake Steamship Co.*, 40 F. [2d] 439, 440.) The through bills of lading, in so far as parts I and II thereof are concerned, are clearly neutral and separable contracts; they relate to two distinct matters, viz.: (1) Transportation by land, in the one instance, and (2) by sea in the other; and I cannot see but that the part thereof involving the Fleet Corporation is clearly *maritime* (See *Loma Fruit Co.* v. *International Navigation Co.*, 11 F. [2d] 124, 126); and this irrespective of the fact that the suit is fundamentally a suit on contract. (See *El Oriente*, 5 F. [2d] 251, 254.)

This fact, coupled with the undisputed facts alleged in the moving affidavit as to ownership of the vessel by the United States, and the other features hereinbefore mentioned, would entitle the defendant Fleet Corporation to a dismissal of the actions, for, as said in the *Johnson Case* (*supra*, p. 327): " On the facts above stated it is clear that each of the causes of action arose out of the possession or operation of a merchant vessel by or for the United States. Directly or mediately, the money required to pay a judgment against any of the defendants in these cases would come out of the United States. It is the real party affected in all of these actions." And again (p. 327): " It follows that on disclosure — whether by pleading or proof — of the facts aforesaid, the District Court should have dismissed each case for lack of jurisdiction."

Plaintiff urges, however, that there is this distinction to be drawn between the *Johnson Case* (*supra*) and those at bar. It is asserted by plaintiff that all that the *Johnson* case holds is that the remedy given by the Suits in Admiralty Act is exclusive only in all cases where a party can obtain relief pursuant to the provisions of that act; and that the question to be determined here, therefore, is whether the plaintiff in these actions could have obtained relief pursuant to the provisions of the Suits in Admiralty Act; that causes of action against parties in admiralty must be complete in themselves; that plaintiff in this action could not safely have sued the Fleet Corporation because he is in doubt as to its liability as the damage occasioned to the merchandise may well have occurred on the rail carriers; that he could not safely swear in any pleading that it was caused solely by the defendant Fleet Corporation; that in a libel in admiralty he could obtain no adjudication of his rights against the Fleet Corporation. Likewise, that he could not

have joined the Fleet Corporation with the rail carriers as parties defendant in an admiralty suit, because, as to the defendant rail carriers, the contract was not maritime in nature, the rail carriers having performed the terms of their contract by carriage over the land. In this dilemma and state of uncertainty as to the party chargeable for the damage, plaintiff instituted these actions against the various defendants pursuant to the provisions of sections 211 and 213 of the Civil Practice Act, in order that this court might determine which one of them is liable; and he also relies on subdivision 3 of section 24 of the United States Judicial Code (U. S. Code, tit. 28, § 41) as entitling him to invoke the remedies provided by these sections of the Civil Practice Act.

And in this connection, it is said by the plaintiff that the *Johnson Case* (*supra*) did not embrace a situation where land *and* water carriers were before the court as parties defendant joined in the same action; that the *Johnson* case was not a case where plaintiff was in doubt as to the liability of the various defendants and asked the court to determine which of such defendants was liable. And these features are said to mark the distinction which renders the *Johnson* case inapplicable.

In view of the fact that the point presented is one of first impression, and, seemingly, has never before been the subject of decision, I have gone into the matter at some length.

Giving due weight to the provisions of the Suits in Admiralty Act, and the construction and interpretation placed upon it in the *Johnson* case and in *Fleet Corporation* v. *Rosenberg Bros.* (*supra*), to the provisions of subdivision 3 of section 24 of the Judicial Code and sections 211 and 213 of the Civil Practice Act, and as well, also, to the underlying reason of the plaintiff which impelled the suit to be brought in this forum, I am yet unable to perceive any controlling distinction in legal principle between the *Johnson* case and the present suits. Viewed from any angle, it seems to me that if the plaintiff's contention is to be upheld and the attempted distinction is to prevail, it entirely destroys the rationale behind the rule of decision in the *Johnson* case, as well as in *Fleet Corporation* v. *Rosenberg Bros.* (*supra*).

Section 211 of the Civil Practice Act, entitled " Joinder of defendants generally," provides: "All persons may be joined as defendants against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative; and judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities."

Section 213 of the Civil Practice Act, entitled " Where doubt exists as to who is liable," provides: " Where the plaintiff is in

doubt as to the person from whom he is entitled to redress, he may join two or more defendants, to the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

Subdivision 3 of section 24 of the United States Judicial Code (U. S. Code, tit. 28, § 41), dealing with the original jurisdiction of the Federal District Court, provides that it shall have jurisdiction " Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it * * *."

I do not see that subdivision 3 of section 24 of the United States Judicial Code aids the plaintiff. It saves to suitors in all cases the right of a common-law remedy where the common law is competent to give it. Sections 211 and 213 of the Civil Practice Act are new, and are purely statutory legal remedies, and as far as my own industry has revealed, these or like remedies did not exist in this State, at common law, and would, therefore, appear to be not embraced within the exception contained in section 24, subdivision 3.

It is held that this provision does not give to a suitor who has a right of action growing out of a maritime contract the right to go into a law court to find a *new* remedy; but he may employ a common-law forum if one is found competent to work out the rights involved in his contract. (*Schuede* v. *Zenith Steamship Co.*, 216 Fed. 566, 568.) In other words, what is saved to a suitor is not a remedy *in* the common-law courts, but a common-law remedy. (*The Moses Taylor*, 4 Wall. 411, 426, FIELD, J.) And the Municipal Court is not a common-law court but purely one of statutory creation. " Through all the period of its existence, for nearly 150 years under its various titles, down to the passage of chapter 279 of the Laws of 1915, it was a statutory inferior local court of limited jurisdiction * * *." (*Matter of Levy*, 192 App. Div. 550, 553; affd., 229 N. Y. 637.) " The Municipal Court * * * is * * * an inferior tribunal, not proceeding according to the course of the common law, but of statutory creation." (*People ex rel. Jaffe* v. *Fitzpatrick*, 35 Misc. 456, 457.)

Moreover, the Suits in Admiralty Act expressly repealed the provisions of all other acts inconsistent with it. Whatever may be the application and effect of section 24, subdivision 3, as to admiralty and maritime causes between ordinary parties, I think it clear that where the United States or the Fleet Corporation is affected, as a party defendant, whether the action be *in personam* or *in rem*, the provisions of the Suits in Admiralty Act control over all others where the suit is founded upon a maritime contract.

Nor do I see how sections 211 and 213 of the Civil Practice Act

alter the situation in any way. As far as the defendant Fleet Corporation is concerned, it is sufficient to deprive this court of jurisdiction that the suit, as to it, involves a contract which is maritime in its nature, coupled with the other elements mentioned in sections 741 to 748 of title 46 of the United States Code. I do not understand how the mere allegation that plaintiff is in doubt as to which of the defendants is liable, changes the *nature* of the contract or the *status* of the defendant Fleet Corporation under the act. If the court retained the cause merely to determine if the Fleet Corporation was responsible for the damage, it would result in an anomalous situation, for if it was found liable, no judgment could be rendered against it, as, under the Suits in Admiralty Act the Federal District Court would have exclusive jurisdiction of the subject-matter thereof; this court, clearly, would have no jurisdiction. It would result in the paradox of a decision by this court, one which never had jurisdiction. Its findings would have no legal or judicial effect and would be utterly void; a complete nullity. The trial and resulting decision would be a meaningless and impotent proceeding; employed merely to utilize this court solely as a forum for discovery; the trial would be a sort of examination before trial; a sort of discovery proceeding in aid of a contemplated suit; it could not amount to anything more. And the result would be merely to enable the plaintiff from the facts ascertained at the so-called trial, to thereafter file a libel in the Federal District Court with certainty as to the Fleet Corporation being the proper party defendant as the one shown to be legally chargeable with the damage, whereas, without such procedural maneuver, he will not hazard the chance.

But before the court may retain the cause to ascertain which of the defendants will ultimately be liable to the plaintiff, it must first have jurisdiction of the subject-matter; if it has none, and if it affirmatively appears, as it does here, that such jurisdiction is lacking, it may not proceed merely for that purpose. (*Horton* v. *Cantwell*, 108 N. Y. 255, 269; *Matter of Mount*, 185 id. 162, 167; *Matter of Gorsch*, 103 Misc. 156, 160.) If the court has no jurisdiction of the subject-matter of the action as to the defendant Fleet Corporation, in contemplation of law, the action, as to it, does not exist; and the existence of an action is essential to the validity of the rendition of a judgment or of any determination made. (*Booth* v. *Kingsland Ave. Bldg. Assn.*, 18 App. Div. 407, 408.)

The application of sections 211 and 213 of the Civil Practice Act presupposes the existence of an action and jurisdiction of the parties and of the subject-matter as well. If the rendition of judg-

ment or other determination is impossible for want of jurisdiction, then the court may not retain the cause merely to ascertain whether or not the defendant Fleet Corporation is responsible for the condition. (Cases *supra*.) Of what use or benefit is such a determination?

Courts do not function for any such purpose (Cases *supra*); nor do they exist to determine abstract or academic or moot questions (Cases *supra*); they exist to decide real controversies, to adjudicate rights in such a manner that their determination will be operative, final and conclusive. (*Thomas* v. *Musical Mut. Prot. Union*, 121 N. Y. 45, 51; *Matter of Reynolds*, 144 App. Div. 458, 465.)

I realize the difficult position of the plaintiff; his situation is, obviously, an unfortunate one; the plaintiff is saddled with a heavy and unnecessary burden; he is compelled to assume, what seems to me, an unwarranted and unjustified risk. But law is law, and a judge may not and cannot balance between his personal inclinations and his plain duty. The statute is restricted in its operation and cannot be extended by a latitudinarian construction.

The movant also asserts that even if these cases involved suits against an ocean carrier who was not the Government, there would still be no jurisdiction over the ocean carrier, as this court, in any event, has no jurisdiction of suits involving maritime contracts.

I do not so understand the law. While it is true that, as a general rule, " In cases of contract, admiralty jurisdiction will attach if it has reference to a maritime service or maritime transaction " (*Pillsbury Case*, *supra*, 440), yet this rule is subject to exception. State courts have jurisdiction of actions *in personam* upon maritime contracts and torts. (3 Foster Fed. Prac. [6th ed.] 3127, § 560-g.) (See, also, *Schuede* v. *Zenith Steamship Co.*, *supra; Rounds* v. *Cloverport Foundry & Machine Co.*, 237 U. S. 303, 306.) " The fact that a controversy may be cognizable in the admiralty does not necessarily mean that the parties to it may not properly carry it into a court of law of a state. * * * If they are content to seek only the relief which such other court is competent to give, they may there try out the differences between them, despite the fact that the disputes have their origin in a maritime transaction." (Rose Fed. Juris. [3d ed.] 164, § 148.) (See, also, *Leon* v. *Galceran*, 78 U. S. [11 Wall.] 185, 187, 188.)

It is the characteristic of admiralty to act *in rem*. (Curtis Juris. U. S. Courts, 306.) But where the action is one on simple contract for breach of the contract of carriage, or sounds in simple tort, merely for damages sustained to the corpus which is the subject of the carriage, and in no way involving the vessel exclusively

*in rem*, but resting solely *in personam*, state courts have jurisdiction of such an action (*Ingersoll-Rand Co.* v. *Fleet Corporation*, 195 App. Div. 838; *Danielsen* v. *Sigsbee, Humphrey & Co.*, 115 Misc. 184, App. Term), including the Municipal Court (*Danielsen Case, supra*, pp. 189, 190.) Except for the special provisions of the Suits in Admiralty Act investing the Federal District Court with exclusive jurisdiction of the subject-matter of the action where the Fleet Corporation is concerned as a party defendant, it could have been properly sued in this court and joined with the other defendants, even though the suit is founded on a maritime contract. (*Ingersoll-Rand Company* and *Danielsen Cases, supra*.)

Indulging in the widest latitude of construction, consistent with the maintenance of a judicial attitude, I cannot see any escape from the ruling in the *Johnson Case* (*supra*). From whatever hypothesis of reasoning the plaintiff's contention is viewed, the conclusion is irresistible that the contracts sued on, as far as the Fleet Corporation is concerned, are of a maritime nature and are coupled with the other facts referred to in sections 741–748 of title 46 of the United States Code. The Suits in Admiralty Act creates a new and specific right and prescribes a remedy therefor; and the rule of construction is that such remedy is exclusive of others, at least unless a contrary intention clearly appears. (*Bailey* v. *Colleen Products Corp.*, 120 Misc. 297.) " Statutes of this character must be confined in their interpretation to their real meaning, and cannot be enlarged so as to include cases which are not within their spirit or intent." (*Jessup* v. *Carnegie*, 80 N. Y. 441, 457.) The existence of the facts above referred to deprives this court of jurisdiction. It is not a question of depriving the plaintiff of a remedy by dismissal of the actions, but solely a question whether this court has any jurisdiction of the subject-matter; and as it is clear that it has none, the motions to dismiss must be granted.