**THE CIANO.**

**LOUCRAFT CORPORATION v. SOCIEDED METALURGICA DURO–FELGUERA et al.**

No. 63.

District Court, E. D. Pennsylvania.

Nov. 14, 1945.

Freedman, Landy & Lorry, by Abraham E. Freedman, all of Philadelphia, Pa., for libellant.

Wayland H. Elsbree and T. R. White, both of Philadelphia, Pa., for Reading Co.

KALODNER, District Judge.

This is a libel in admiralty and is presently before the Court on a motion to dismiss made by the respondent, The Reading Company. The question raised by the motion is narrow: whether this Court, sitting as an Admiralty Court, has jurisdiction over the cause of action set out in the libel against the movant.

It may be noted, incidentally, that there are a number of other actions pending before this Court in which the identical question is raised by the same tactic as here employed. Since the parties are agreed that this case is typical, the opinion will be dispositive in those actions as in this.

The libel in this case asserts a cause of action founded upon alleged damage to cargo, and involves a shipment of Spanish brandy from Port of Cadiz, Spain, to Minneapolis, Minnesota. The respondent ocean carrier, a Spanish corporation, issued its bill of lading covering the cargo on its steamship "Ciano", from Port of Cadiz, Spain, to Minneapolis, Minnesota, via Philadelphia, Pennsylvania. At the Port of Philadelphia the cargo was discharged and was taken up by the respondent rail carrier, the Reading Company. The Reading Company issued its inland bill of lading for the shipment from Pier 24, Philadelphia, to Minneapolis, designating the goods in the bill of lading as "Import Traffic SS Ciano".

The libel avers delivery to the rail carrier in good condition and discharge at the ultimate destination in damaged condition; the cause of action against the Reading Company is based on the alleged breach of its obligations as a common carrier in transporting the merchandise from Philadelphia to Minneapolis under its own bill of lading.

Concisely, the movant's position is that the obligation assumed by it was not maritime in nature, that is, the contract was not a maritime contract, and consequently it is not a matter within the admiralty jurisdiction. The libellant's contention is that the shipments contemplated transportation in the most substantial part by the ocean carrier, and that the rail carriage, being essential to effectuate the ocean carriage, thereby became an incident of the maritime transaction and is cognizable in admiralty.

It is well settled that, insofar as contract matters are concerned, the jurisdiction of the admiralty court is limited to causes based upon maritime contracts, and whether a contract is maritime is determined, not according to locality, but by its nature and subject matter. Authority abounds for this statement, but in Insurance Company v. Dunham, 1870, 78 U.S. 1, 11 Wall. 1, 20 L.Ed. 90, the Supreme Court declared finally the boundaries of admiralty jurisdiction (78 U.S. at page 26, 20 L.Ed. 90):

"Secondly, as to contracts, it has been equally well settled that the English rule which concedes jurisdiction, with a few exceptions, only to contracts made upon the sea and to be executed thereon (making locality the test) is entirely inadmissible, and that the true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions."

And 78 U.S. at page 29, 20 L.Ed. 90:

"It thus appears that in each case the decision of the court and the reasoning on which it was founded have been based upon the fundamental inquiry whether the contract was or was not a maritime contract. If it was, the jurisdiction was asserted; if it was not, the jurisdiction was denied. And whether maritime or not maritime depended, not on the place where the contract was made, but on the subject-matter of the contract. If that was maritime the contract was maritime. This may be regarded as the established doctrine of the court."

See also, Northern Pacific S. S. Company v. Hall Bros., 1919, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510.

I think it equally well settled that a contract for ocean carriage is a maritime contract. New Jersey Steam Nav. Co. v. Merchants' Bank, 1848, 47 U.S. 344, 378, 6 How. 344, 378, 12 L.Ed. 465; Morewood v. Enequist, 1859, 64 U.S. 491, 23 How. 491. By analogy, a contract for terrene carriage is non-maritime, since it does not have reference to navigation or maritime commerce. See Norton v. Southern R. Co., 1930, 138 Misc. 784, 246 N.Y.S. 676; The Belgium Maru, D.C.S.D.N.Y., 63 F.Supp.

892, 1935 A.M.C. 665, which is the only case I have found apparently on point, and which dismisses the libel as to the land carrier.

No case brought to my attention treats a contract for land carriage as maritime, although it is said that the circumstances may be such as to make the rights and duties of the parties under a maritime contract involving nonmaritime elements cognizable in admiralty. Thus, in The Moses Taylor, 1867, 71 U.S. 411, 4 Wall. 411, "it was decided that a contract to carry passengers by sea as well as a contract to carry goods, was a maritime contract and cognizable in admiralty, although a small part of the transportation was by land, the principal portion being by water." Insurance Co. v. Dunham, supra, 78 U.S. at pages 28, 29, 20 L.Ed. 90. See also A. Russo & Co. v. United States, 5 Cir., 1930, 40 F.2d 39.[1]

■ Although the rule is that a contract to be cognizable in admiralty must be "wholly maritime," it has been held that "wholly maritime" means that the principal subject matter of the agreement gives character to the whole. Pillsbury Flour Mills Co. v. Interlake S. S. Co., 2 Cir., 1930, 40 F.2d 439, certiorari denied, 282 U. S. 845, 51 S.Ct. 24, 75 L.Ed. 750; El Oriente, D.C.E.D.N.Y., 1925, 5 F.2d 251. However, frequently the "divisibility" test is applied: Judge Learned Hand, in Compagnie Francaise De Navigation A Vapeur v. Bonnasse, 2 Cir., 1927, 19 F.2d 777, at page 779, summarized the theory thus, after stating the rule that to be within admiralty jurisdiction a contract must be wholly maritime:

"A contract both maritime and non-maritime is ordinarily indivisible, so that the rights of the parties cannot be adjusted separately, those maritime in the admiralty, and the rest elsewhere. Admiralty must refuse to assume any jurisdiction over it at all, because it must either ignore the principles of the law of contract, or extend its powers beyond their constitutional scope. But in so far as the maritime obligations may consistently with those principles, be separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. This is clearly indicated in Turner v. Beacham, C.C., Fed.Cas.No.14,252, and The Pennsylvania, 2 Cir., 154 F. 9, though

the decisions did not require such a holding. The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest."

Professor Robertson has suggested that the "logical and practical" view is that the maritime portions, if mixed with large elements of non-maritime character, should be handled in admiralty, if at all separable, but that an indivisible contract which is predominantly maritime should be within the admiralty. Robertson, Admiralty (1939) 192.

These considerations, however, would be pertinent if the movant in this case were the ocean carrier, the court then having before it an assertion of liability based on a "mixed" contract involving maritime and non-maritime features. Cf. California-Atlantic S. S. Co. v. Central Door and Lumber Co., supra, footnote 1; El Oriente, supra; Pillsbury Flour Mills Co. v. Interlake S. S. Co., supra, which is typical of the affreightment-storage situation.

Here, as distinguished from the above cited cases or the case of The Moses Taylor, supra, the libelant is suing the land carrier on its contract, which was not a "mixed contract." Moreover, the railroad, it must be noted, was not a party in any way to the bill of lading issued by the steamship company. Thus, the instant case is different from A. Russo & Co. v. United States, supra.

■ The railroad's contract of carriage was an independent transaction not connected with navigation or with maritime service. The railroad's agreement to carry was wholly independent of the maritime transaction the libelant or its agents had with the steamship company. Furthermore, I regard the designation, "Import Traffic SS Ciano," contained in its bill of lading, as merely a recitation for the information and use of the railroad, and as of no consequence here. That land carriage is not a matter cognizable in admiralty is demonstrated by the considered opinions in the comparable cases of El Oriente, supra, and California-Atlantic S. S. Co. v. Central Door & Lumber Co., supra, although in those cases the libellant's posi-

---

[1] The Moses Taylor case, however, was construed differently in California-Atlantic S. S. Co. v. Central Door & Lumber Co., 9 Cir., 1913, 206 F. 5.

tion was stronger because in each the ship and the steamship company were sought to be held rather than the company performing the terrene duties.

I cannot subscribe to the contention that the land carriage was merely an incident to the ocean carriage and therefore cognizable in admiralty, at least with respect to the land carrier. The only contract involving the movant is its bill of lading, which, as I have said, is wholly terrene. Furthermore, its contract is separable and independent: the railroad's obligations can be effectively enforced in the proper tribunal —a court of common law—without prejudice to any party.

It is asserted that, as a matter of convenience, it is simpler to try the action when both respondents are joined in the same forum. This may be assumed, but convenience does not confer jurisdiction: a court of admiralty jurisdiction cannot, as a court of equity, dispose of non-maritime subjects for the purpose of doing complete justice. The Ada, 2 Cir., 1918, 250 F. 194, 195.

In this connection it may be noted that the libellant cites the case of Evans v. New York & P. S. S. Co., Ltd., D.C.S.D.N.Y., 1906, 163 F. 405, decided by Judge Hough. See also, The Canadian Farmer, D.C.S.D. Cal., 1923, 290 F. 601. Under former Admiralty Rule 59, now incorporated in Admiralty Rule 56, 28 U.S.C.A. following Section 723, Judge Hough determined that although neither the libellant nor the respondent steamship company could have maintained an independent action in admiralty against the respondent warehouseman, the latter could be impleaded by the steamship company, to which it was liable over, to prevent circuity of action and multiplicity of suits. The decision was placed squarely on the ground that the warehouseman was bound to indemnify one who is liable in admiralty. Assuming that the steamship company in the case at bar would be liable in admiralty, I think it a sufficient answer to this case to note that that decision has been disapproved in its own circuit. The Ada, supra; Aktieselskabet Fido v. Lloyd Braziliero, 2 Cir., 1922, 283 F. 62, certiorari denied, 260 U.S. 737, 43 S.Ct. 97, 67 L.Ed. 489; Soderberg v. Atlantic Lighterage Corporation, 2 Cir., 1927, 19 F.2d 286, certiorari denied, 275 U.S. 542, 48 S.Ct. 37, 72 L.Ed. 416. The analysis contained in the Aktieselskabet case and in the case of The Goyaz, D.

C.S.D.N.Y., 1922, 281 F. 259, is, I think, convincing and I am in full agreement.

Accordingly, it is my opinion that the exceptions must be sustained and the libel dismissed as against the Reading Railroad Company.

An order may be entered severing the action and dismissing the libel in accordance with this opinion.