THE CADDO. THE M. MORAN. TEXAS CO. v. UNITED STATES.

(District Court, S. D. New York. June 26, 1922.)

Admiralty ⊝⇒34—Suit in rem against vessel sold by United States not barred under Suits in Admiralty Act.

The provision of Suits in Admiralty Act March 9, 1920, § 5, that suits thereunder on causes of action arising prior to its taking effect must be brought within one year after it went into effect, does not apply to a suit in rem authorized by Act Sept. 7, 1916 (Comp. St. § 8146a et seq.), against a vessel which has been sold by the government and for which the United States assumes liability under section 4 of Suits in Admiralty Act March 9, 1920.

In Admiralty. Suit by the Texas Company, owner of the barge Caddo, against the steam tug M. Moran, formerly the Retriever; the United States, claimant. On exceptions to libel. Overruled.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for libelant.

William Hayward, U. S. Atty., of New York City (John Kennedy White, of Buffalo, N. Y., of counsel), for the United States.

AUGUSTUS N. HAND, District Judge. The libel alleges that on February 12, 1920, the barge Caddo was in tow of the steam tug Retriever, now known as the M. Moran, and the latter, while proceeding to shorten the tow line, negligently collided with the Caddo, damaging the latter. The libel against the M. Moran was in rem, and was filed June 22, 1921.

The memorandum submitted by the claimant states that at the time the cause of action arose the vessel was owned by the United States of America, and was so owned at the time of the filing of the libel, but before process was served, to wit, on the 1st day of July, 1921, the vessel in question was sold and delivered to the Moran Towing Company, and was in possession of that company at the time the process of arrest was executed.

On July 26, 1921, the United States Attorney filed a suggestion in the office of the clerk of this court to the effect that on the 22d of June, 1921, the day when the libel was filed, the M. Moran was a privately owned vessel and not in the possession of the United States; that the cause of action arose from previous possession, ownership, or operation of the vessel by the United States; that on the 26th of July the vessel was arrested upon the alleged cause of action set forth in the libel; that the United States is interested in the cause, and de-

---

sires the release of the vessel from such arrest, and assumes liability for the satisfaction of any decree obtained by the libelant.

Upon the foregoing suggestion the court released the vessel. The United States now excepts to the libel upon the ground that it was filed on the 22d day of June, 1921, more than one year after the Suits in Admiralty Act became effective. Suits in Admiralty Act of March 9, 1920 (41 Stat. 525) § 5, provides:

"That suits as herein authorized may be brought only on causes of action arising since April 6, 1917, provided that suits based on causes of action arising prior to the taking effect of this act shall be brought within one year after this act goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises."

The fourth section of the Suits in Admiralty Act provides:

"That if a privately owned vessel not in the possession of the United States * * * is arrested or attached upon any cause of action arising or alleged to have arisen from previous possession, ownership, or operation of such vessel by the United States, * * * such vessel shall be released without bond or stipulation therefor upon the suggestion by the United States, through its Attorney General or other duly authorized law officer, that it is interested in such cause, desires such release, and assumes the liability for the satisfaction of any decree obtained by the libelant in such cause, and thereafter such cause shall proceed against the United States in accordance with the provisions of this act."

It is evident that if the tug was operated by the government at the time of the collision and the period of limitation provided in section 5 of the foregoing act governs, the cause of action is barred.

The libelant insists that it had a right to institute this cause of action under Act Sept. 7, 1916 (Comp. St. § 8146a et seq.), which would enable it to attach the vessel and would not have so limited in time the beginning of the suit in admiralty. The government, on the other hand, calls attention to section 13 of the Suits in Admiralty Act of March 9, 1920, which says:

"That the provisions of all other acts inconsistent herewith are hereby repealed."

If this answer is conclusive as to all suits in admiralty which might have been instituted in rem under the act of 1916, and had not been instituted prior to March 9, 1920, I can hardly see why section 4 was inserted in the Act of March 9, 1920. This section enables the government to file its suggestion and upon assumption of liability obtain the release of privately owned vessels arrested upon causes of action arising during the previous possession, ownership, or operation of the United States. The purpose was doubtless to render government vessels more readily salable by enabling the government to discharge them from arrest in the hands of its vendee if it saw fit to assume liability for maritime liens which arose while in its previous possession. Section 4, supra, assumes that there will be seizures of privately owned vessels to enforce such liens arising during government ownership, and I can discover no reason for supposing that the liens were regarded by Congress as invalid. The Suits in Admiralty Act enabled a lienor to sue the government in personam in case the vessel was in possession of the United States and made that procedure exclusive.

It also enabled the government, if it desired, to discharge vessels in the hands of its vendees from attachment for causes of action arising during government ownership. The latter provision shows that provisions of the act of 1916 which subjected government-owned merchant vessels to the customary maritime liens were not repealed. Only the mode of enforcing such liens was changed.

The Western Maid, 257 U. S. 419, 42 Sup. Ct. 159, 66 L. Ed. 299, decided by the Supreme Court on January 3, 1922, is not applicable to the facts before me. That case merely held that no maritime lien arises against a government-owned vessel in the absence of statute, and that the statute (the act of 1916) did not create a lien because the vessels operated by the government were not merchant vessels. Here the vessel was a merchant vessel and the statute covers the case, and has not been repealed in respect to such liens as it recognized, but only as to certain methods of enforcing them.

The exceptions are overruled.