## UNITED STATES v. CLYDE–MALLORY LINES.

### THE EGLANTINE.

### No. 10043.

Circuit Court of Appeals, Fifth Circuit.

April 29, 1942.

Rehearing Denied June 2, 1942.

570

J. Frank Staley, Atty., Dept. of Justice, of Washington, D. C., Francis M. Shea, Asst. Atty. Gen., Sidney J. Kaplan, Sp: Asst. to Atty. Gen., Herbert W. Christenberry, U. S. Atty., of New Orleans, La., and L. V. Cooley, Jr., Asst. U. S. Atty., of Slidell, La., for appellant.

Jas. Hy. Bruns, of New Orleans, La., and Eugene Underwood, of New York City, for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The Steamship Brazos, owned by the Clyde-Mallory Lines, and the Steamship Eglantine, owned by the United States and operated as a merchant vessel, collided in a fog off Galveston, Texas, on December 21, 1932. In limitation-of-liability proceedings promptly brought by Clyde-Mallory Lines, it was determined that the collision was caused by mutual fault, and the damages were fixed at $34,280.93 to the Brazos and $26,621.07 to the Eglantine.

On June 10, 1937, a libel in rem was brought by Clyde-Mallory Lines against the Eglantine, which was then privately owned, to recover one-half the difference between the damages sustained by the two vessels. Upon suggestion of interest by the United States in accordance with Section 4 of the Suits in Admiralty Act,[1] the Eglantine was released, and the cause proceeded against the United States. Exceptions to the libel were filed by the United States on the ground that the action was not instituted within the time prescribed by Section 5 of the Suits in Admiralty Act. The exceptions were overruled, issue was joined, the cause proceeded to trial, and resulted in a judgment for the libellant. On appeal from that judgment the vital question is: Does the two-year limitation period prescribed by Section 5 of the Suits in Admiralty Act apply to suits brought against a private vessel upon a cause of action that accrued when that ship was owned and operated by the United States as a merchant vessel?

The Suits in Admiralty Act was passed March 9, 1920. Since that time two cases have been before the courts involving the question here presented; The Bascobal, 295 F. 299, decided by this court in 1923, and The Caddo, 285 F. 643, a district-court decision rendered in 1922. In

---

[1] 41 Stat. 526, 46 U.S.C.A. § 744.

each instance the court held that the one-year limitation imposed by the Act upon suits brought against the Government on causes of action arising prior to its passage was not applicable to a libel in rem brought after the ship had passed from the Government into private ownership. In each instance the conclusion was reached by construing the section to embrace only in personam actions against the Government itself. This Act, like any other that waives sovereign immunity from suits, should be strictly construed in favor of, not strictly construed against, the interests of the United States.[2] Guided by this fundamental principle of construction, and considering the Act as a whole, the maritime history forming its background, the obvious legislative purposes intended to be accomplished thereby, and the related decisions that evolved as the Act was subsequently applied, we are forced to the conclusion that the Bascobal and Caddo decisions should not be followed here.

No one questions the power of the United States to place limitations upon its gratuitous waiver of its sovereign immunity. By Sections 2, 3, and 4 of the Suits in Admiralty Act, 46 U.S.C.A. §§ 742-744 the United States imposed personal responsibility upon itself for maritime torts committed by it, fixing an equal potential liability upon itself whether its vessels remained in its hands or were sold to private owners. By Section 5 thereof it required all suits authorized by the Act to be brought within two years after the cause of action arose.

The obvious purpose of Section 5 was to place a limitation upon all liability created by the Act against the United States. Since the United States was subject only to personal liability for its torts, and since the extent of that liability was not in any wise affected by the sale of a vessel to a private owner, unless the unmistakable language of the Act forbids any other construction it is most unreasonable to attribute to Congress an intention to limit the time for filing a suit where the vessel remains in the hands of the Government, and to place no limitation at all upon a suit designed to impose an identical liability upon it where the vessel has been sold.

The act of the Eglantine in colliding with the Brazos was not a tort unless the laws of the United States had made it so. If the United States had not waived its sovereign immunity from suit, no cause of action would have accrued to the owners of the Brazos either while the vessel remained the property of the Government or after it passed into private ownership.[3]

At the time the accident occurred, the Suits in Admiralty Act furnished the exclusive remedy in admiralty against the United States on all causes of action arising out of the operation of its merchant vessels.[4] The sovereign immunity of the United States having been waived, an action for tort arose; and the Suits in Admiralty Act was the only law by which this result was accomplished. Therefore, the cause of action existed by virtue of the Suits in Admiralty Act, was authorized only by that Act, and could not have been effectively prosecuted but for the provisions of that Act.

The relevant portion of Section 5 of the Suits in Admiralty Act, as amended June 30, 1932, is as follows: "Suits based on causes of action arising prior to the taking effect of this Act shall be brought within one year after this Act goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises."[5] This provision distinguished between suits as to time only. If the cause of action arose prior to March 9, 1920, all suits, with no differentiation as to the nature of the action or as to the defendant thereto, were required to be brought prior to March 10, 1921. All others, by necessary implication meaning all suits brought on causes of action arising after March 9, 1920, must be brought within two years after the cause of action arose.

---

[2] Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108; Price v. United States, 174 U.S. 373, 19 S.Ct. 765, 43 L.Ed. 1011; Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598.

[3] The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299.

[4] United States Shipping Board, etc., v. Rosenberg Bros., 276 U.S. 202, 48 S.Ct. 256, 72 L.Ed. 531; Johnson v. United States Shipping Board, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010; Norton v. Southern R. Co., 138 Misc. 784, 246 N.Y.S. 676; Benedict on Admiralty, 6th Ed., Sec. 209.

[5] 47 Stat. 420, 46 U.S.C.A. § 745.

■■ It thus appears that the cause of action here sued upon was created by virtue of the Suits in Admiralty Act; that all suits upon such causes of action were required by the Act to be brought within two years after the cause of action arose; and that it was the intention of Congress to limit its liability resulting from the waiver of its sovereign immunity without regard to whether it still owned or had sold its vessels. This suit was not brought within two years after the cause of action arose, and the exceptions to the libel should therefore have been sustained.

The judgment appealed from is reversed, and the cause is remanded to the court below for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

I think the Bascobal case was well decided. On its authority I dissent.