## BURTON v. UNITED STATES.

United States District Court
S. D. New York.
Dec. 18, 1952.

William L. Standard, New York City, for libelant.

Myles J. Lane, U. S. Atty., New York City, Burlingham, Veeder, Clark & Hupper, New York City, of counsel, for respondent.

SUGARMAN, District Judge.

In a suit by a government employed seaman under the Suits in Admiralty Act, respondent excepts to the libel on the ground that it is jurisdictionally defective.

Libelant alleges that he became ill due to respondent's negligence and the unseaworthiness of the vessel between September 1, 1944 and June 28, 1945 while employed aboard the S.S. Rebecca Boone, then operated by respondent's General Agent, the North Atlantic & Gulf Steamship Co., Inc.

On February 24, 1947, an action was commenced in the City Court, New York County, against the General Agent to recover damages for this injury. The City Court action was dismissed on November 30, 1951 because improperly brought against the General Agent.[1]

On October 29, 1951 (45 days before libelant's cause of action would be outlawed)[2] a notice of claim, in conformity with the regulations[3] was filed with the General Agent. The instant libel was filed on December 6, 1951 (7 days before the expiration of the revived statute of limitations [note 2 supra]).

Respondent urges that an administrative disallowance of libelant's claim or failure to reject it within sixty days from filing (the sixtieth day being December 28, 1951—

---

1. Cosmopolitan Shipping Company v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692.

2. 46 U.S.C.A. § 745 as amended Dec. 13, 1950, Public Law 877, 81st Cong., 64 Stat. 1112.

3. General Order 32, Administrator, War Shipping Administration, 8 Fed.Reg. 5414, 46 CFR § 304.24.

15 days after the last day to commence suit under the extended statute of limitations [note 2 supra]) was a prerequisite to libelant's right to file the libel. Such prerequisite lacking, respondent urges, the libel must be dismissed. I disagree.

On February 9, 1942, Presidential Executive Order No. 9054 [4] was filed. It established the War Shipping Administration and set forth its powers and functions.

"On April 19, 1942 the War Shipping Administration gave notice of a general requisition of all oceangoing vessels. Shortly, it was operating, as owner or under requisition charters, bareboat charters, or time charters, most of the Merchant Marine of the United States." [5]

On March 24, 1943, the Clarification Act [6] became law.

"The Clarification Act was consequent legislation intended to protect and clarify the rights of the multitude of seamen who had suddenly become government employees. The basic scope and philosophy of the measure was to preserve private rights of seamen while utilizing the Merchant Marine to the utmost for public wartime benefits. See House Report 2572, Senate Reports 1655, 1813, 77th Congress —Second Session; House Report 107, Senate Report 62, 78th Congress— First Session.

"Since 1920, seamen employed aboard government merchant vessels have been permitted by the Suits in Admiralty Act to bring libels in personam against the United States. The Clarification Act extended the right to sue to seamen aboard government ships employed as public vessels. But, to prevent the flood of litigation which the hazards of war-time operation made imminent, an administrative disallowance of claims of seamen employed on both classes of vessels was made a prerequisite to enforcement under the Suits in Admiralty Act. The Administrator, War Shipping Administration, was empowered to make regulations governing the filing and administrative allowance or disallowance of seamen's claims. The resulting regulations * * *" [note 5 supra]

were filed on April 22, 1943 by the War Shipping Administration [note 3 supra]. Those regulations, so far as here pertinent, are summarized as follows:

"Section 304.23 provides that no seaman shall commence a court action for the enforcement of claims for personal injuries unless such claim has been filed by him as provided in Sections 304.24 and 304.25 and has been administratively disallowed by the person or agency with whom it was so filed.

"Section 304.25 requires claims for personal injuries to be filed with the General Agent of the vessel with respect to which the claim arose, or such Agent's Berth subagent to whom the former may refer and claim for handling.

"Section 304.26 provides that 'if the person or agency with whom the claim is filed, in accordance with the directions contained herein, fails to notify the claimant in writing of a determination upon such claim within sixty days following the date of filing thereof, the claim shall be presumed to have been administratively disallowed, and the claimant shall be entitled to enforce his claim by court action.'" [note 5 supra]

On July 8, 1946, an appropriations act for the Navy Department was enacted. [7] It contained, in § 202 thereof, provision transferring all the functions, powers and duties of the War Shipping Administration to the Maritime Commission for liquidation, but only until December 31, 1946, and with the specific proviso that the Administration "cease to exist" as of Septem-

4. 7 Fed.Reg. 837.

5. Manderscheid v. United States, N.D.Cal. S.D., 88 F.Supp. 232, 233.

6. Public Law 17, 78th Cong., 57 Stat. 45; 50 U.S.C.A.App. §§ 1291–1295.

7. Public Law 492. 79th Cong.; 60 Stat. 481.

ber 1, 1946. There was disagreement between the Senate [8] and the House [9] as to the exact period during which the Commission was to absorb and liquidate the affairs of the Administration which resulted in a conference agreement reporting the bill in its final form.[10] Except for differing dates, all drafts of the act provided that the Administration "shall cease to exist" and that date was finally fixed at September 1, 1946.

The Maritime Commission, effective September 1, 1946, ordered all orders, regulations, etc. of the Administration continued in effect.[11] Subchapter G of the Maritime Commission regulations, as published in 46 CFR (Chapter II), which contains §§ 304.23, 304.25 and 304.26 discussed above, is entitled "Emergency Operations".

In 1950, following the decision of Cosmopolitan Shipping Co. v. McAllister [note 1 supra], the Suits in Admiralty Act [12] was amended by providing therein [13] that the two year statute of limitations contained in 46 U.S.C.A. § 745 for the commencement of suits

"shall not bar any suit against the United States brought hereunder within one year after December 13, 1950, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law was timely commenced and was or may hereafter be dismissed solely because improperly brought against any person, partnership, association, or corporation engaged by the United States to man-

age and conduct the business of a vessel owned or bareboat chartered by the United States or against the master of any such vessel: * * *."

This amendment was intended to affect only a limited number of seamen coming within its terms [14] and as appears from the facts initially set forth above, this libelant is in this category.

The respondent's position, in support of its exceptions herein, is in essence that, absent the condition precedent of an administrative rejection of the claim filed by libelant or the expiration of sixty days thereafter without action thereon, the court lacks jurisdiction.

The cases [15] offered by respondent in support of its argument and those offered by libelant [16] in opposition, supply no guide because they all involve suits commenced against the United States before the amendment of the Suits in Admiralty Act [note 2 supra] under which libelant here proceeds.

When the Maritime Commission took over the functions, powers and duties of the no longer existing Administration on September 1, 1946, it did so to liquidate the Administration's affairs by December 31, 1946. It merely stood in the Administration's shoes.[17] The Commission so treated its functions in this regard as temporary, as to deliberately neglect to amend the Administration's regulations by substituting its own name therein.[18] If the requirement for the administrative disallowance of a claim under the Clarification

8. Senate Report 1435, 79th Cong., 2nd Sess.

9. House Report 2085, 79th Cong., 2nd Sess.

10. House Report 2394, 79th Cong., 2nd Sess.

11. 46 CFR 687 Headnote to Subchapter G.

12. 46 U.S.C.A. § 741 et seq.

13. 46 U.S.C.A. § 745.

14. U. S. Code Cong. Ser., 81st Cong., 2nd Sess. 1950, p. 4209.

15. Rodinciuc v. United States, 3 Cir., 175 F.2d 479; Johnson v. United States, D.

C.Mass., 102 F.Supp. 210; Abbattista v. United States, D.C.N.J., 95 F.Supp. 679; McMahon v. United States, 342 U. S. 25, 72 S.Ct. 17.

16. Manderscheid v. United States, note 5 supra; Godbout v. Eastern S. S. Lines, D.C.Mass., 82 F.Supp. 467.

17. Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16, marginal note 1.

18. 46 CFR 687 headnote—"* * * Since the regulations in this subchapter were not revised subsequent to the tranfer, there are references to the 'Administrator' and 'War. Shipping Administration' remaining in the text."

Act [note 6 supra] and the Administration's Regulations [note 3 supra] at all survived the demise of the Administration on August 31, 1946 it, at most, prevailed only until two years thereafter in order to cover in, under the two year statute of limitations in the Suits in Admiralty Act, claims arising before the Administration ceased to exist.

It is my opinion that on September 1, 1948, the requirement, in a seaman's suit, of filing a claim and awaiting its administrative disallowance or the expiration of sixty days of inactivity thereon before suit, no longer prevailed. This, notwithstanding that, from habit or an overabundance of caution, the practice still persists of filing seamen's claims for injuries with the General Agents of the vessels upon which they were injured.

It is also significant that in the first regulations [19] adopted by the Federal Maritime Board, as successor to the Maritime Commission under Reorganization Plan No. 21 of 1950,[20] "Subchapter G—Emergency Operations" [note 11 supra] was omitted. This omission may be regarded as administrative recognition of the obsolescence of its provisions, including those upon which respondent here relies.

There thus remains for determination whether Congress, in according the right to a limited number of seamen, including this libelant, to bring suit between December 13, 1950 and December 13, 1951 [note 2 supra] intended to hedge that permission with the prior requirements of preliminary administrative disallowance of a claim.

While it is true that a statute, waiving sovereign immunity from suit, must be strictly construed,[21] it is also true that statutes benefiting seamen must be liberally construed.[22] Assuming the amendment to 46 U.S.C.A. § 745 [note 2 supra] to be a waiver of sovereign immunity, the rule of strict construction does not contem-

plate reading into the statute something that is manifestly absent. Congress, in granting this additional year to December 13, 1951, in which seamen in a limited class might bring suit against the United States, if it had intended to make administrative rejection of a claim a condition precedent thereto, would have as clearly so stated, as it did in the enactment of the Clarification Act. This it failed to do. Thus, the amendment must be construed as meaning no less than it says, namely, that the seamen in the category involved, were accorded until December 13, 1951 in which to file a libel. In the absence of clear intent to the contrary the beneficiaries of the amendment should not be saddled with the requirements of regulations of an administrative agency abolished four years before by specific Congressional enactment.

The exceptions and exceptive allegations of the respondent are overruled. Proceed accordingly.

19. 46 CFR, 1951 Supp. 228 et seq.

20. 3 CFR, 1950 Supp. 173.

21. United States v. Clyde-Mallory Lines, 5 Cir., 127 F.2d 569, 571, affirmed 317 U.S. 395, 63 S.Ct. 294, 87 L.Ed. 355.

22. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692.