John J. HANDLEY, Libellant,

v.

UNITED STATES of America, Respondent.

United States District Court
S. D. New York.
Jan. 9, 1958.

George J. Engelman, New York City, for libellant.

Paul W. Williams, U. S. Atty. for Southern District of New York, New York City, by Dougherty, Ryan & Mahoney, New York City, Lawrence J. Mahoney, New York City, of counsel, for respondent.

DAWSON, District Judge.

This action, tried by the Court without a jury, involves a claim for damages by libellant, a Merchant Marine officer, who claims he was stabbed by a fellow-officer on October 1, 1952. Libellant elected at the trial to proceed on the theory of unseaworthiness rather than negligence, contending that respondent breached its "absolute duty to the libellant to provide him with a seaworthy vessel, manned with officers and crew equal in seamanship, character and disposition to the ordinary men in that calling. (Libel, Par. Eighth.)

The Court finds the following facts:

1. At the time of the occurrence in question the respondent United States of America owned and operated the Steamship Knox Victory.

2. Libellant was employed by respondent from on or about August 1950 to and including October 1, 1952, as Second Office on the S.S. Knox Victory.

3. In the period of time preceding October 1, 1952, and on October 1, 1952, one Sam Wilson was employed by the respondent as Third Officer on the S.S. Knox Victory.

4. In the course of the voyage of the S.S. Knox Victory, which ended at Seattle, Washington, on October 1, 1952, several arguments of a non-violent nature had taken place between Wilson and the libellant. On several occasions Wilson told the libellant that he wanted him off the ship so that he, Wilson, could get the position of Second Officer. On the morning of October 1, 1952, Wilson went to the master of the vessel and told him that if libellant did not leave the ship at the end of the voyage he would "kill" him. Wilson also threatened Alfred Henderson, the Junior Third Officer, on various occasions and challenged him to fight.

5. Wilson is a large man, weighing about 250 pounds and standing 6 feet 2 inches in height. Libellant weighed about 170 pounds and stood 5 feet 7½ inches in height.

6. Wilson was characterized, both by the libellant and by Henderson, as a pugnacious individual and as a bully. He had a pocket knife with a large blade which he frequently displayed and at times threatened to use.

7. On the morning of October 1, 1952, the crew of the S.S. Knox Victory was paid off. Wilson was paid off, signed off the ship and left for the dock. He left some belongings on board, however, and indicated he might return to sign on for the following voyage. Libellant did not sign off the ship at this time but did leave the ship to go on the dock. At that time he was still dressed in his working clothes.

8. The following incident on the dock gave rise to this lawsuit: Apparently the bad blood between Wilson and the libellant continued and they were engaged in an argument on the dock as they proceeded toward the barrier at which the Customs Officers were present. Wilson, although he testified that he did not ordinarily drink, admitted that on that particular morning, before going to the dock, he had "four, five or six drinks"—a "combination of Scotch and Bourbon." He had some of these drinks with the Chief Officer. Respondent contends, and the testimony of the Customs Officers would seem to corroborate, that libellant was pursuing Wilson and making threats toward him, and that when they got to the Customs barrier the libellant struck a blow at Wilson. Libellant, on the other hand, contends that during this period on the dock, Wilson was threatening him and stated he would put him on charges, and that libellant retorted by calling Wilson a bully. At any rate, all parties agree that irrespective of what started the altercation, Wilson, when he reached a point near the Customs barrier, stabbed the libellant in the abdomen with his pocket knife. Wilson explained that the stabbing was accidental. He contended that as the libellant lunged at him he held up his hands to protect his face and the knife, which he held in his hand cut the libellant as he was raising his hands before his face.

This explanation of the stabbing seems unworthy of belief. A man holding a knife in his hand which he is raising to protect his face would not accidentally plunge the knife into his opponent's abdomen. He might accidentally slash the other man but the medical evidence here is that the injury was not a slash but a cut directly into the abdomen. The Court finds as a fact that Wilson did draw a knife and plunge it into libellant's abdomen.

The knifing stopped the fight. The Customs Officers separated the antagonists. Wilson was arrested and taken to jail; the libellant was taken to a hospital. At the hospital the wound was cleaned and then sewn up. This was done under a local anesthetic. He was given a blood transfusion. Libellant remained at the hospital from October 1, 1952, to October 24, 1952, and continued under out-patient care at the hospital until December 16, 1952. He then came east to New York where he received further out-patient care at the United States Public Health Hospital on Staten Island. He was confined to this hospital for three days with influenza, but this was not causally related to the accident. Libellant was found fit for duty on January 17, 1953 and returned to sea as a ship's officer on January 24, 1953. He has continued actively working as ship's officer whenever employment is available since that date.

10. The wages of the libellant on the S.S. Knox Victory were at the basic rate of $522.56 per month, plus overtime. In 1951 his earnings were $10,597; in the period from January 1, 1952, to October 1, 1952, his earnings were $10,213.

11. It was stipulated that if libellant was entitled to maintenance this should be computed at the rate of $8 per day.

12. Libellant made a very good recovery from his injuries. The only permanent results of his injury are a scar on his abdomen, which is tender to touch and which causes some pain when bending, and that his bowels are hyperactive as a result of the injury.

13. While libellant was still in Seattle he made oral claim to an insurance adjuster representing the general agent of the ship of respondent, and gave him a written statement outlining the basis of his claim. This adjuster referred him to an office in New York. When libellant got to New York he went to this office several times in an attempt to secure payment of his claim, but was notified by a man in the office that no payment would be made of the claim.

### Opinion

 The liability of the respondent in this case would depend on whether Wilson was equal in seamanship and disposition to the ordinary man in his calling. The Court concludes that Wilson was a person of dangerous propensities and proclivities at the time of the assault and that he was a person of violent character with a belligerent disposition and disposed to making threats and assaults, and that respondent had therefore breached the warranty of seaworthiness in that Wilson was not a person equal in seamanship, character and disposition to the ordinary seaman. Boudoin v. Lykes Bros. S. S. Co., Inc., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354. It may be recognized, of course, that sailors "lead a rough life and are more apt to use their fists than office employees." Hand, J., in Jones v. Lykes Bros. S. S. Co., Inc., 2 Cir., 1953, 204 F.2d 815, 817. However, for an officer of a ship to go around challenging other officers to fight, and to tell the master that if a superior officer does not leave the ship he will "kill him," and then when a fight starts to pull a knife and stab the officer, is an indication that the officer was not equal in disposition to the ordinary officer. See, e. g., Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515.

Respondent contends, however, that (1) at the time of the stabbing Wilson had signed off the ship and the ship was no longer responsible for his actions, and (2) libellant had not complied with the provisions of Public Law 17, 78th Cong., 57 Stat. 45, 50 U.S.C.A.Appendix, §§ 1291–1295.

 While technically Wilson at the time of the stabbing was no longer employed by the respondent, nevertheless the respondent, by having Wilson on board ship, had created an unseaworthy condition which was dangerous to libellant, a condition which existed as long as libellant had not left the vicinity of the ship. Libellant has elected not to sue on the basis of negligence and, therefore, the question as to whether Wilson was or was not a member of the crew at the instant of the stabbing becomes of less importance. If libellant is entitled to a seaworthy ship he is entitled to it not only while on board the ship but also while in the vicinity of the ship. For example, if libellant were injured by a collapsing boom of the ship while he was on the dock, it could hardly be said that his injuries were not caused by the unseaworthiness of the ship. Libellant had a right to leave the vicinity of the ship without being injured by the unseaworthy condition of the tackle of the ship or of the crew of the ship. The unseaworthy condition did not cease when Wilson signed off the ship; it did not cease so long as he was in the vicinity of the ship and in a position to do harm to other members of the crew.[1]

 Respondent further contends that libellant could not bring this suit because he had not filed a claim with the United States Maritime Administration and had an administrative disallowance of this claim prior to the institution of suit. It is contended by the respondent that such claim and administrative disallowance are jurisdictional prerequisites to the maintenance of this suit, under the provisions of Public Law 17, 78th Cong., 57 Stat. 45, 50 U.S.C.A.Ap-

---

1. Thus under the Jones Act, 46 U.S.C.A. § 688, a seaman who was injured on the dock while returning from shore leave was held entitled to recover, Marceau v. Great Lakes Transit Corp., 2 Cir., 1945, 146 F.2d 416, as was a seaman assaulted by a fellow-crewman about a mile from the ship. Kyriakos v. Goulandris, 2 Cir., 1945, 151 F.2d 132.

pendix, §§ 1291–1295. This Act, known as the Clarification Act, extended the right to sue to seamen aboard government vessels employed as public vessels but in order to prevent the flood of litigation which the hazards of wartime made inevitable, an administrative disallowance was made a prerequisite of the enforcement of their rights under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. See Burton v. United States, D.C.S.D.N.Y.1952, 109 F.Supp. 139, 141; Danstrup v. The Richmond P. Hobson, D.C.E.D.N.Y.1953, 112 F.Supp 851. The Administrator of the War Shipping Administration was empowered to make regulations governing the filing and administrative allowance or disallowance of seamen's claims, and regulations were issued. See General Order 32, 46 C.F.R. §§ 304.20–304.29 (1944). See also N.S.A. Order No. 67, 1955 A.M.C. 1134.

Libellant argues that the requirement for administrative disallowance ended with the expiration of the War Shipping Administration in 1946. See Burton v. United States, supra.

Respondent argues that the regulations issued by the War Shipping Administrator and the requirement of the Clarification Act that there be an administrative disallowance did not expire with the end of the War Shipping Administration in 1946 but have been continued under the Maritime Administration and under the National Shipping Authority. See Thomas v. United States, D.C.E.D.Pa., 127 F.Supp. 48, 1954 A.M.C. 1641; Danstrup v. The Richmond P. Hobson, supra; N.S.A. Order No. 67, 1955 A.M.C. 1134. This matter was earlier argued before Judge Edelstein on an exception by respondent addressed to the libel. Judge Edelstein overruled respondent's exception and denied respondent's motion to dismiss. Handley v. United States, D.C.S.D.N.Y. 1954, 127 F.Supp. 539.

Respondent asks me to reconsider this issue, but the Court finds that such reconsideration is unnecessary since it finds upon the facts shown at the trial that the provisions of the Clarification Act have been complied with. The facts in this case show that libellant did make a claim to a representative of the insurance underwriters of the general agent of the ship of respondent. Libellant filed a written statement of his claim, dated October 8, 1952, in Seattle, Washington. This statement is written out in longhand and in it the libellant gives his name, his position on the ship and his version of the facts out of which his claim arises. He tells of his relations with the Third Mate and of the circumstances of the knifing. Libellant testified at the trial that he was told in Seattle that he should pursue his claim further in New York. In New York he was informed by a representative of the insurance underwriters that no payment would be made on the claim. This libel was filed on August 20, 1954, almost two years after the incident and the rejection of libellant's claim.

■■ Libellant's handwritten claim is not artistically drawn nor is it an object of technical perfection, but the Court finds that it meets the requirements of the Clarification Act and the regulations issued thereunder. See General Order 32, 46 C.F.R. §§ 304.20–304.29 (1944). The Clarification Act was enacted for the benefit of seamen and must be given a liberal construction so that its purposes may be given effect. A seaman is not expected to file a claim with the technical precision of a trained lawyer, nor need he hire an admiralty proctor in order to file his claim. See McInnis v. United States, 9 Cir., 1945, 152 F.2d 387; Walker v. United States, D.C.S.D. N.Y.1951, 102 F.Supp. 618, affirmed, 2 Cir., 194 F.2d 288. The claim was sufficient to give notice to respondent of the injury and of the facts on which his claim was based. The claim need not follow any particular form. See 46 C. F.R. § 304. The respondent itself had access to any additional information it might have needed, both as to the Third Mate and as to the accident. Walker v. United States, supra; McInnis v. United States, supra, 152 F.2d at page 389. Although there was no written rejection of

the claim this is not necessary. An administrative disallowance will be presumed, when a period of 60 days has elapsed since the filing of a claim. See 46 C.F.R. § 304.26.

█ Libellant has also asserted a claim for maintenance and cure. However, one of his claims for damages is for loss of wages and the period for which he seeks reimbursement for maintenance and cure is the same period for which he is claiming loss of wages. The Court of Appeals for this Circuit recently determined:

"Plaintiff cannot recover maintenance and cure in addition to loss of wages, for the same periods." Evans v. Schneider Transportation Co., 2 Cir., 250 F.2d 710, 712.

All medical expenses of the libellant were paid by the respondent and he is making no claim for medical expenses.

### Conclusions

The Court concludes that:

1. This Court has jurisdiction of this action.

2. Samuel M. Wilson was a man of vicious propensities not equal in disposition to the ordinary man of his calling and was an unseaworthy seaman, and Wilson's unseaworthiness was the proximate cause of the injuries sustained by the libellant on October 1, 1952.

█ 3. By reason of the injuries suffered by the libellant he sustained the following damages:

(a) Loss of wages from October 1, 1952, to January 24, 1953, in the amount of $4,286.05, and

(b) Pain and suffering, as a result of personal injuries, the fair and reasonable value of which is in the sum of $5,000.

4. The value of libellant's maintenance while on out-patient status as a result of the injuries he received, from October 24, 1952, to January 17, 1953, a total of 84 days at the rate of $8 a day, would be $672. However, since libellant has been awarded damages which include loss of wages for the period from October 1, 1952, to January 24, 1953, he cannot secure an allowance for maintenance and cure for the same period; therefore, the claim for maintenance and cure is dismissed.

The Court finds that the libellant is entitled to a decree for damages in the amount of $9,286.05, and for costs and disbursements of this action. Let judgment be entered accordingly.