Aston BARTHOLOMEW, Plaintiff-Appellant,

v.

UNIVERSE TANKSHIPS, INC., Defendant-Appellee.

No. 315, Docket 25989.

United States Court of Appeals Second Circuit.

Argued May 4, 1960.

Decided June 21, 1960.

Morton M. Shreck and Nathan L. Berke, Shreck & Berke, New York City, for plaintiff-appellant.

Victor S. Cichanowicz, New York City (Cichanowicz & Callan, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, MEDINA, Circuit Judge, and JAMESON, District Judge.*

MEDINA, Circuit Judge.

On April 15, 1952 appellant Aston Bartholomew, a seaman, was assaulted by a fellow crew member aboard the Ulysses, a vessel owned by appellee. He brought suit, alleging three claims: negligence under the Jones Act, 46 U.S.C.A. § 688, unseaworthiness under the general maritime law and maintenance and cure. The first two claims were submitted to the jury and the trial judge reserved the maintenance and cure claim for decision by him later as a judge in admiralty. The jury returned a verdict for $25,000 less $400 paid to the defendant for a release which the jury concluded was not binding. Both parties agreed to have the decision on the maintenance and cure claim put off until after the determination of the appeal from the judgment entered on the jury's verdict. We affirmed the judgment in Bartholomew v. Universe Tankships, Inc., 2 Cir., 1959, 263 F.2d 437, and the Supreme Court denied certiorari, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030. The trial judge subsequently dismissed the claim for maintenance and cure on the grounds that: (a) he believed the verdict amply compensated Bartholomew "for whatever he would ordinarily be entitled to by way of maintenance and cure"; and (b) it was to be presumed that the "items" of Bartholomew's claim for maintenance and cure were included in the verdict. Bartholomew appeals from the decree of dismissal.

While Bartholomew insists that there is no reason why he should not be permitted to recover "full damages" in

his "damage suit" and "also collect full damages in his maintenance and cure action even though there may be overlapping of damages or double compensation," the uniform course of authority has been to the contrary. E. g., Yates v. Dann, 3 Cir., 1955, 223 F.2d 64, 67; McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, certiorari denied, 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561; Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590; Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 1939, 105 F.2d 604, certiorari denied, 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505. We hold that no such overlapping or double compensation is permissible.

The problem before us for decision is, how to determine whether or not on the record before us any allowance whatever for maintenance and cure would necessarily constitute a double recovery. This problem is particularly interesting as the numerous cases on the subject are seemingly in conflict and there has been comparatively little discussion of the principles controlling the decision of particular issues. We have concluded that there can be no further recovery for medical services and "cure," but that there must be a trial of the issues arising out of the claim for maintenance, or board and lodging.

### I

Few legally protected rights have so ancient and international a lineage as the right of a mariner, injured or falling ill in the service of his ship, to medical treatment, food and lodging, and wages. As the Supreme Court has very recently noted: "Markedly similar provisions granting relief of this nature are to be found in the Laws of Oleron, promulgated about 1150 A.D. by Eleanor, Duchess of Giuenne; in the laws of Wisbuy, published in the following century; in the laws of the Hanse Towns, which appeared in 1597; and in the Marine Ordinances of Louis XIV published in 1681."[1] Mitchell v. Trawler Racer, Inc.,

---

* Sitting by designation.

1. These codes are reprinted in 30 Fed. Cas. pp. 1171–1216. Relevant portions of these codes are also reprinted with notes and commentary in 2 Norris, The Law of Seaman (1952) 125–30. Other codes

914

80 S.Ct. 926, 929. In the United States the seaman's rights to maintenance and cure were first recognized by Mr. Justice Story in two cases which he decided on circuit, Harden v. Gordon, C.C.D.Me. 1823, 11 Fed.Cas. p. 480, No. 6,047, and Reed v. Canfield, C.C.D.Mass.1832, 20 Fed.Cas. 426, No. 11,641. In Harden v. Gordon, supra, after an extensive survey Mr. Justice Story declared that he had "not been able to detect a single instance, in which the maritime laws of any foreign country throw upon seamen disabled or taken sick in the service of the ship, without their own fault, the expenses of their cure." [11 Fed.Cas. 482.] Mr. Justice Story found these rights desirable not only on humanitarian grounds but also because they served "the great public policy of preserving this important class of citizens for the commercial service and maritime defence of the nation." In upholding the jurisdiction of a court of admiralty over this subject matter he stated that the right to maintenance and cure "constitutes in the contemplation of law a part of the contract for wages, and is a material ingredient in the compensation of the labor and services of the seaman."

■ "[T]he vitality of a seaman's right to maintenance and cure has not diminished through the years." Mitchell v. Trawler Racer, Inc., supra, 80 S.Ct. at page 929. It has become established that the obligation of the shipowner attaches as a result of the relationship of employment without any regard for the form of the contract or the will of the contracting parties. Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 372, 53 S.Ct. 173, 77 L.Ed. 368. The rights of the seaman are neither conditioned on fault on the part of the shipowner nor on the absence of fault on his part.[2] Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. Nor must the injury or illness be in any way causally connected with shipboard duties. Farrell v. United States, supra. The obligation to provide maintenance and cure has been expanded so far that two of the foremost admiralty scholars have concluded that "With the exception of borderline cases on misconduct * * * [t]he remedy has become absolute." Gilmore and Black, The Law of Admiralty (1957) 261.

■ There are generally three separate items of recovery in an action for maintenance and cure. The first of these is maintenance, a living allowance sufficient to enable the seaman to maintain himself in a manner comparable to that which he received aboard ship. Calmar S. S. Corp v. Taylor, 1938, 303 U.S. 525, 527–528, 58 S.Ct. 651, 82 L.Ed. 993. Maintenance is related to out-of-pocket expenses and thus is not recoverable for periods during which the seaman receives free room and board at a Marine Hospital. Calmar S. S. Corp. v. Taylor, supra; The Bouker No. 2, 2 Cir., 1917, 241 F. 831, certiorari denied, 1917, 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529. However, union contracts often provide for a specific daily allowance for maintenance and courts may adopt such provisions without proof of actual expenditure. See Reardon v. California Tanker Co., 2 Cir., 1958, 260 F.2d 369, certiorari denied, 1959, 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628; Yates v. Dann, D.C.D.Del. 1954, 124 F.Supp. 125, reversed on other grounds, 3 Cir., 1955, 223 F.2d 64.

■ The second item is cure, which relates to the expense of medical treatment. The duty to provide such treat-

dealing with this area of the law were compiled beginning in the year 1338 for the use of the Lord High Admiral of England or of his Lieutenant who sat as his judge in the High Court of Admiralty.

2. Wilful misconduct on the part of the seaman will cause a forfeiture of his rights. Aguilar v. Standard Oil Co. of New Jersey, 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. The courts have, however, been extremely loath to find such misconduct. See Bentley v. The Albatross S.S. Co., 3 Cir., 1953, 203 F.2d 270; The Anna Howard Shaw, D.C.S.D.N.Y. 1947, 75 F.Supp. 210, reversed sub nom. Warren v. United States, 2 Cir., 1949, 179 F.2d 919, reversed, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503.

ment, however, extends only until the patient reaches the point of maximum recovery. Calmar S. S. Corp. v. Taylor, supra; Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.

 The final item of recovery comprises wages until the "end of the voyage" the seaman was on when he was incapacitated. The Osceola, 1903, 189 U. S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Harriman v. Midland S. S. Line, 2 Cir., 1953, 208 F.2d 564.[3] It is important to note that if an incapacitated seaman has been put on shore before the end of the voyage there will be a period when he is entitled to recover in a maintenance and cure action not only for room and board and medical expenses but also for wages.

 It has long been settled that a seaman is not required to elect between a claim for maintenance and cure and a claim for negligence under the Jones Act. On the contrary, the Supreme Court has held the two rights are "consistent and cumulative." Pacific S. S. Co. v. Peterson, 1928, 278 U.S. 130, 49 S.Ct. 75, 77, 73 L.Ed. 220. In this same case the Court also stated that a claim for maintenance and cure was consistent with one for unseaworthiness. In approving the statement of Mr. Justice Gray in an earlier case, The A. Heaton, C.C.D.Mass.1890, 43 F. 592, 595, the Court declared, 278 U.S. at page 137, 49 S.Ct. at page 77:

> "that the right of a seaman to receive his wages to the end of the voyage and to be cured at the ship's expense, being 'grounded solely upon the benefit which the ship derives from his service, and having no regard to the question whether his injury has been caused by the fault of others or by mere accident, does not extend to compensation or allowance for the effects of the injury; but it is in the nature of an additional privilege, and not of a sub-

stitute for or a restriction of other rights and remedies,' and 'does not, therefore, displace or affect the right of the seaman to recover against the master or owners for injuries by their unlawful or negligent acts.' "

However, as the Third Circuit has aptly stated, "it does not follow that a particular item of his claim, such as maintenance, if recovered in one suit, may again be recovered in another. For in the admiralty as elsewhere in the law a litigant may not recover compensation for a single claim more than once. The ancient rule in the admiralty that the vessel and her owner must provide an injured seaman with maintenance was intended to assure him three meals a day and a bed in which to sleep during his treatment and convalescence. There is no basis in logic or law for assuming that he may ask for six meals a day or twin beds, however." McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, 729, certiorari denied, 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L. Ed. 561. Accord Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590; Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 1939, 105 F.2d 604, certiorari denied, 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505.

 When a plaintiff has previously recovered a verdict awarding damages either for negligence or for unseaworthiness and he then attempts to recover for maintenance and cure, the defense is often raised that the previous recovery bars any further allowance. This issue arises, as it does in the instant case, where the unseaworthiness and negligence claims have been submitted to the jury, and the maintenance and cure claim has been reserved for decision by the judge, in admiralty, on the record made at the trial plus such additional proofs as the parties may offer. We think the test to be applied in the determination of this issue, in cases where plaintiff has been awarded a substantial recovery, is a simple one: the

---

**3.** For a discussion of the problems arising in determining the equivalent of the "end of the voyage" in situations where the seaman signs on for a period other than a single voyage see 2 Norris, supra, at 136–39.

items of damage specified and included in the instructions to the jury are presumed to be included in the general verdict and there may be no later allowance for any of such items by way of maintenance and cure. We further hold that as to this defense of duplication or prior payment the defendant must bear the burden of proof. Claudio v. Sinclair Refining Co., D.C.E.D.N.Y.1958, 160 F. Supp. 3; Stendze v. Boat Neptune, D.C. D.Mass.1955, 135 F.Supp. 801. We do not see how this defense could properly be denominated *res judicata*, as the issues in the damage claim for negligence or unseaworthiness are not the same as the issues arising out of a claim for maintenance and cure. La Fontaine v. G. M. McAllister, D.C.S.D.N.Y.1951, 101 F.Supp. 826. Moreover, a verdict for defendant in an action for damages for negligence or unseaworthiness will not preclude the unsuccessful plaintiff from thereafter recovering in a separate action for maintenance and cure John A. Roebling's Sons Co. of New York v. Erickson, 2 Cir., 1919, 261 F. 986, certiorari denied, 252 U.S. 585, 40 S.Ct. 394, 64 L.Ed. 729. Had the jury in the instant case rendered a verdict for defendant, Bartholomew would clearly have been entitled to an allowance for maintenance and cure. It is by analogy to the defense of payment that the burden of establishing duplication rests upon the defendant, as above stated.

Turning now to specific items of this claim we observe that this case does not involve the problem of wages until the end of the voyage as these wages were paid in full. Furthermore, the trial judge instructed the jury, in the event it found for the plaintiff, to award damages for all past and future medical expenses. So any further recovery for these expenses under the guise of cure was properly barred. Thus the case comes down to whether or not recovery for room and board was included in the prior award.

## II

In the event of liability of the shipowner on the negligence and un-

seaworthiness claims the injured seaman is entitled to recover indemnity for his loss of earnings, past and prospective, for medical expenses reasonably incurred in the past and to be incurred in the future, and also an additional sum on account of his physical injuries and for pain and suffering. In many if not most cases, with some exceptions in the case of harbor craft such as ferries and tugs, the shipowner provides food and a place to sleep, roughly the equivalent of board and lodging ashore. As this board and lodging is part of the compensation earned by the seaman, it is well settled law that the calculation of loss of earnings may be based upon his wages paid in cash, plus the economic gain arising from his receipt of board and lodging. Conte v. Flota Mercante Del Estado, 2 Cir., 1960, 277 F.2d 664; McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, 728, certiorari denied, 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561; Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 1939, 105 F.2d 604, certiorari denied, 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505. See also Jacobson v. United States, D.C.W.D.Wash.N.D.1942, 44 F.Supp. 685. While the seaman may not split his tort claim into fragments and sue at various times for one part of his damages and then for another, Fetter v. Beale, 1 Ld.Raym. 339, 692, 91 Eng. Rep. 11, 1122 (1699, 1702), see Smith v. Lykes Brothers-Ripley S. S. Co., supra, 105 F.2d at pages 605–606, he need not claim or seek to establish at the trial of the counts based on negligence or unseaworthiness all the damages to which he may be entitled. The W. H. Hoodless, D. C.E.D.Penn.1941, 38 F.Supp. 432. Thus a seaman may deliberately refrain from offering proof of the fair value of his board and lodging. An illustration is Reardon v. California Tanker Co., 2 Cir., 1958, 260 F.2d 369, certiorari denied, 1959, 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed. 2d 628, where, by failure to prove or claim the value of board and lodging as part of lost wages, the seaman frustrated an attempt by the shipowner to diminish or eliminate the seaman's re-

covery for lost wages by proving the payment of maintenance of $576 pursuant to the terms of a union collective bargaining agreement, which the shipowner contended was more than the seaman's actual expenses for maintenance and the amount of his lost wages. The seaman may decide not to prove or claim so much of his loss of wages as is attributable to the cash value of his board and lodging for other reasons, or for no reason at all. He has a right to assert and prove his claims in such fashion as he thinks will be most likely to effect a maximum recovery.

Applying these principles to the case before us, we can see no answer to Bartholomew's contention that, if he did not offer proof of or litigate the cash value of his board and lodging as part of his claim for lost wages, the verdict could not have included any damages for board and lodging, and, consequently, any later allowance for board and lodging, as part of the claim for maintenance could not possibly amount to duplication or double payment. We note, however, that no finding of fact was made below on the subject of whether or not Bartholomew withheld this part of his claim, whether or not it was submitted to the jury, and whether or not it is included in the verdict. We shall presently return to a discussion of what the trial record discloses.

█ As we understand it, the shipowner not only contends that the issue of board and lodging was litigated and that the verdict must be presumed to include an amount representing the cash value of board and lodging, it also contends that, even if this issue had been deliberately withheld by the seaman, and not submitted to the jury as an item of damages, nevertheless it must be conclusively presumed to be included in any damages awarded for loss of wages, past and prospective. We do not think the authorities support this contention of the shipowner; and we now hold that

where the seaman withholds proof of the cash value of board and lodging and the instructions to the jury do not include this item as part of the seaman's damages for loss of wages, a later allowance for board and lodging as maintenance will not constitute double payment or duplication.

The holding of the Third Circuit in McCarthy v. American Eastern Corporation, 1949, 175 F.2d 727, certiorari denied, 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561, is explicit on this point. There the seaman testified, on the trial of his action based on negligence and unseaworthiness, "that his wage included room and board in addition to the monetary amount." In refusing to permit duplication in the claim for maintenance, Judge Maris said, at page 729:

"It follows, therefore, that when an injured seaman recovers *full* damages in an action for indemnity based upon unseaworthiness and negligence *in which he has claimed loss of wages including the value of the board and lodging which form part thereof* and medical expenses, if any, he has thereby recovered the maintenance and cure to which he is entitled up to the time of the trial, at least." (Italics ours.)

The same result would follow from the reasoning of the Fifth Circuit in Smith v. Lykes Brothers-Ripley S. S. Co., 1939, 105 F.2d 604, certiorari denied, 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505. Judge Weinfeld in the Southern District, La Fontaine v. The G. M. McAllister, 1951, 101 F.Supp. 826, and Judge Zavatt in the Eastern District, Claudio v. Sinclair Refining Co., 1958, 160 F.Supp. 3, have reached the same conclusion.

The shipowner claims that a contrary rule has been established by this court in Evans v. Schneider Transportation Co., 2 Cir., 1957, 250 F.2d 710, cited in Handley v. United States, D.C.S.D.N.Y. 1958, 157 F.Supp. 616. But the statement in Evans at page 712, "Plaintiff

cannot recover maintenance and cure in addition to loss of wages, for the same periods," does not have the wide application appellee ascribes to it. The point now under discussion was not before the court, nor could it have been, as the record in Evans discloses that the evidence on which the damages for loss of wages were based included the cash value of board and lodging. The trial judge in Evans instructed the jury: "It has been testified he (Evans) was a wheelsman earning a total, including the value of his board and room, of $400 a month." Moreover, we find nothing contrary to our present holding in the brief Per Curiam in Ortiz v. Grace Line, Inc., 2 Cir., 1957, 250 F.2d 124, a case argued on the same day and decided by the same panel of judges as Evans.

In the case of Bartholomew now before us the jury in answer to a specific interrogatory found Bartholomew not guilty of any contributory negligence.

It is worthy of note, however, that in cases where the question of contributory negligence is litigated and the rule of comparative negligence is applicable, and the jury returns only a general verdict for a plaintiff who has put the value of his board and lodging in issue, it will not be possible for the defendant in a subsequent suit for maintenance and cure to prove any specific amount of duplication, because he will never be able to show that the jury made no deduction from the plaintiff's damages because of his contributory negligence. In such a case at least one court has precluded the plaintiff from further recovery. See Lazarowitz v. American Export Lines, D.C.E.D.Pa.1949, 87 F.Supp. 197. And those cases where the seaman has settled his claim against a third party tortfeasor before seeking a recovery against the shipowner for maintenance and cure involve a different method of ascertaining whether or not there will be duplication, and perhaps a different rule as to the burden of proof. See Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590; Gomes v.

Eastern Gas and Fuel Associates, D.C. D.Mass.1954, 127 F.Supp. 435; 1955, 132 F.Supp. 29.

### III

Apparently misled by the general language in Evans to which reference has already been made, the trial judge decided as matter of law that any further recovery by way of maintenance would constitute a duplication of the damages already awarded by the verdict of the jury. We think this issue is one of fact, Muise v. Abbott, supra, 160 F.2d at page 591; Smith v. Lykes Brothers-Ripley S. S. Co., 5 Cir., 1939, 105 F.2d 604, 606–607, certiorari denied, 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505; The W. H. Hoodless, D.C.E.D.Penn. 1941, 38 F.Supp. 432, 433, and, accordingly, we remand the case so that this issue may be determined by the trial judge. In the event that no duplication is found, all other direct and collateral issues relating to the claim of maintenance are open and should also be decided, including of course issues relating to the true nature of Bartholomew's ailment, the extent of any malingering by him and so on.

We summarize the contentions of the parties on the issue of duplication. Bartholomew argues: that he at no time tendered an issue on the subject of board and lodging, except in connection with his claim for maintenance; that he offered no proof of the cash value of his board and lodging aboard ship; that he in effect requested the trial judge to instruct the jury that his loss of wages was to be based upon the money payable to him as wages and that this instruction was given in the very words submitted by counsel. He further argues that he requested the court to instruct and the court did in substance instruct the jury that they were not to be concerned with the claim for maintenance and cure, that it should not in any way enter into their deliberations, and that they should not indulge in any speculation on the sub-

ject. On the other hand the shipowner refers to what may have been an inadvertent reference, in another part of the instructions, to the fact that Bartholomew was earning $95 a month, "of course this is with found, board and lodging." The shipowner also, and without reference to the trial transcript, states at several places in its brief, "there was testimony that plaintiff received board and lodging in addition to the monetary amount" of his wages. We have been unable to find any such testimony. Perhaps all that is intended to be said is that as Bartholomew was working on shipboard as a seaman it was to be inferred that he was receiving board and lodging in addition to his $95 a month.

Based upon the statement in the unreported opinion below that the trial judge believed the verdict "amply compensated" Bartholomew "for whatever he would ordinarily be entitled to by way of maintenance and cure," there are intimations in the briefs submitted by the parties to the effect that the trial judge had or did not have power to dispose of the issues of maintenance and cure by a general over-all determination that the verdict is or is not large enough to cover maintenance and cure as well as damages caused by negligence or unseaworthiness or both. Lest there be any misunderstanding on this point we hold that the trial judge had no intention of disposing of the maintenance and cure issues in any such informal manner; nor would it have been proper for him to do so. Our affirmance of the judgment based on the negligence and unseaworthiness claims left open for future determination the claim for maintenance and cure but it did not leave open any questions relating to the inadequacy or excessiveness of the verdict.

The case is remanded for determination of the claim for maintenance, in accordance with this opinion, and the decree below is otherwise affirmed.